IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>TONY MERKSICK,<br><br>Defendant. | **8:19CR109**<br><br>**ORDER AND FINDINGS<br>AND RECOMMENDATION** |

This matter is before the Court on the Motion in Limine (Filing No. 29) and Motion to Suppress (Filing No. 31) filed by Defendant, Tony Merksick.  The government opposes both motions (Filing No. 38; Filing No. 39).

On September 30, 2019, the Court held a telephone conference with counsel for the parties regarding Defendant's motions.  The audio file of the telephone conference was filed on the same date.  (Filing No. 43).  An evidentiary hearing on Defendant's motion to suppress was held on October 1, 2019.  Defendant was present with his attorney, Steve Lefler.  The government was represented by Assistant United States Attorney, Sean Lynch.  Former Internal Revenue Service ("IRS") criminal investigation special agent, Timothy Kasun ("S.A. Kasun"), and current IRS criminal investigation special agent, Edward Sealock ("S.A. Sealock"), testified on behalf of the government.  Exhibit 101 offered by Defendant was received by the Court over the government's objection.  A transcript (TR.) of the hearing was prepared and filed on October 4, 2019.  (Filing No. 49).  The matter is now fully submitted to the Court.  For the reasons stated on the record during the September 30, 2019, telephone conference, Defendant's motion in limine is denied.  And the undersigned magistrate judge will recommend Defendant's motion to suppress also be denied.

## BACKGROUND

Defendant is charged in a two-count Indictment with willfully making and subscribing false tax returns under 26 U.S.C § 7206(1).  The Indictment alleges that Defendant committed the violations on or about April 13, 2013, and March 24, 2014.  (Filing No. 4).  As part of the investigation leading to the charges in the Indictment, S.A. Kasun and S.A. Sealock interviewed Defendant in his home in Council Bluffs, Iowa on May 18, 2016.  On that date, the agents parked approximately half a block away from Defendant's house on the opposite side of the street,

approached Defendant's residence, and knocked on the front door. (TR. 9-10). When Defendant opened the door, the agents showed Defendant their badges and identified themselves as special agents with the U.S. Treasury, IRS criminal investigation, and told Defendant they had some questions for him. Defendant invited the agents inside. (TR. 10-11).

Defendant led the agents to the living room. The agents sat together on Defendant's couch and Defendant sat by himself on a chair approximately three to four feet away. The agents explained to Defendant that they were conducting a criminal investigation into his tax returns, not an audit, and told him he did not have to answer a question if he did not want to answer. Defendant agreed to answer questions. (TR. 11-14; 56). The agents did not provide Defendant with *Miranda* warnings before beginning the interview. (TR. 43).

S.A. Kasun testified that Defendant seemed to understand the agents' questions and the nature of their visit, did not appear under the influence of any substances, did not ask to stop answering questions, did not request an attorney, and did not ask the agents to leave. S.A. Kasun testified he and S.A. Sealock did not threaten Defendant, make promises, or make physical contact with Defendant beyond a handshake. Defendant refused to answer certain questions throughout the interview. (TR. 15-16; 46). Defendant used his cell phone during the interview and the agents did not try to prevent him from using it. (TR. 17, 57). The agents did not handcuff or restrict Defendant's ability to move in his house and did not block the front door; Defendant answered the front door more than once during the interview. (TR. 16-17, 59-60). The interview lasted approximately two and a half to three hours. The agents ended the interview when Defendant's wife came home. (TR. 18). S.A. Kasun testified the overall tone of the interview was "as friendly as it can be under the circumstances." (TR. 52). S.A. Kasun testified they did not record the interview because it was their policy to only record custodial interviews. (TR. 14).

At some point during the investigation, the government obtained electronic devices from Defendant's ex-wife without a warrant or Defendant's consent. (Filing No. 32 at p. 8). Defendant now moves to suppress any evidence taken from the electronic devices seized during the investigation without a warrant, in violation of the Fourth Amendment. (Filing No. 31). Defendant also moves to suppress any evidence and statements obtained by the government during the May 18, 2016, interview. (Filing No. 31). Defendant asserts that he was not properly advised of his *Miranda* rights prior to the interview and that therefore any statements he made must be excluded pursuant to the Fifth Amendment. Additionally, although Defendant does not raise the issue in his

motion, Defendant argues in his brief and at the hearing that his due process rights were violated because agents did not record the interview.  (Filing No. 32 at p. 7; TR. 64).

The government intends to call Defendant's ex-wife, Patricia Merksick, to testify at trial.  In his motion in limine, Defendant seeks to prevent her from testifying by asserting the marital communications privilege.  (Filing No. 29).

## ANALYSIS

### I.   Motion in Limine

Defendant requests that the Court exclude any testimony elicited from his ex-wife on the basis that such testimony is subject to the marital communications privilege.  (Filing No. 30 at pp. 3-5).  Federal courts recognize two marital privileges: the marital confidential communications privilege and the adverse spousal testimony privilege.  *United States v. Espino*, 317 F.3d 788, 795 (8th Cir. 2003)(citing *United States v. Bad Wound*, 203 F.3d 1072, 1075 (8th Cir. 2000)).  The adverse spousal testimony privilege provides that an individual "may be neither compelled to testify nor foreclosed from testifying" against the person to whom he or she is married at the time of trial. *Bad Wound*, 203 F.3d at 1075.  The marital confidential communications privilege prohibits testimony regarding private intra-spousal communications during the marriage.  *United States v. Evans*, 966 F.2d 398, 401 (8th Cir. 1992).  For the privilege to apply, the communication (1) must be made during a valid marriage; (2) must be words or acts by one spouse that are intended as a communication to the other spouse, and (3) must be made in confidence.  See *id.*

Defendant requests the Court to prohibit "any and all testimony that may be elicited from Defendant's former spouse" on the basis that such testimony is privileged by the marital confidential communications privilege.  This privilege is not as broad as Defendant asserts and does not prohibit his ex-wife from testifying regarding any matters outside of private intra-spousal communications made during their marriage.  Additionally, the government responded both in its brief (Filing No. 39) and during the September 30, 2019, telephone conference that it does not intend to introduce any testimony or evidence of private communications between the Merksicks during their marriage.  (Filing No. 39 at p. 3; Filing No. 43).  Based on the information before the Court, Defendant's objection on marital confidential communications privilege grounds is denied, subject to reassertion at trial if the testimony would meet the three requirements as set forth in *Evans*, 966 F.2d 398, above.

To the extent Defendant attempts to invoke the adverse spousal testimony privilege, he does not have standing to raise the privilege on behalf of his ex-wife. See *Bad Wound*, 203 F.3d at 1075 ("The privilege therefore rests with the testifying spouse, who may waive the privilege without the consent of the defendant spouse."). In any event, this privilege is inapplicable as the parties stipulated that Defendant and his ex-wife legally divorced in 2018. See *Bad Wound*, 203 F.3d at 1075 (noting that the privilege prevents an individual from being compelled to testify against "the person to whom he or she is married *at the time of trial*.").

Finally, Defendant requests that his ex-wife be prohibited from testifying because her testimony is irrelevant, lacks foundation, its probative value is outweighed by prejudicial effect, and because she lacks credibility and knowledge. These objections are premature and must be raised at trial when appropriate. Therefore, Defendant's motion in limine will be denied, subject to reassertion at trial as stated above.

## II.    Motion to Suppress

### A.  *Search and Seizure of Electronic Devices*

Defendant seeks suppression of any evidence that was derived from the warrantless search and seizure of his electronic devices. (Filing No. 31). The government represented in its brief (Filing No. 38) and during the telephone conference with the Court (Filing No. 43) that it does not intend to introduce evidence from the search and seizure of the digital devices in its case in chief. Additionally, the parties "have agreed to stipulate that in the event that [Defendant] were to put the contents of the digital devices at issue for the purposes of claiming the use of record keeping software, that the devices were forensically imaged by Computer Investigative Specialists with the Internal Revenue Service and then examined by Special Agents with the Internal Revenue Service who found no such records were located on these digital devices." (Filing No. 38 at p. 4; TR. 4). Therefore, the undersigned magistrate judge will recommend Defendant's motion to suppress be denied as to his Fourth Amendment challenge.

### B.  *Statements*

Defendant asserts that his statements to S.A. Kasun and S.A. Sealock during the May 18, 2016, interview must be suppressed because the agents did not advise Defendant of his *Miranda* rights. "The Fifth Amendment requires that *Miranda* warnings be given when a person is

interrogated by law enforcement after being taken into custody." *United States v. Giboney*, 863 F.3d 1022, 1027 (8th Cir. 2017)(citing *United States v. Huether*, 673 F.3d 789, 794 (8th Cir. 2012)); see *Miranda v. Arizona*, 384 U.S. 436 (1966).

At the conclusion of the evidentiary hearing in this case, defense counsel conceded that Defendant was not in custody during the May 18, 2016, interview, (TR. 64), and the undersigned magistrate judge agrees that the totality of the circumstances does not support a finding that Defendant was in custody. See *United States v. Griffin*, 922 F.2d 1343, 1347 (8th Cir. 1990)(setting forth factors to determine whether an individual is in custody, including: (1) whether the suspect was informed at the time of questioning that the questioning was voluntary, that the suspect was free to leave or request the officers to do so, or that the suspect was not considered under arrest; (2) whether the suspect possessed unrestrained freedom of movement during questioning; (3) whether the suspect initiated contact with authorities or voluntarily acquiesced to official requests to respond to questions; (4) whether strong arm tactics or deceptive stratagems were employed during questioning; (5) whether the atmosphere of the questioning was police dominated; or, (6) whether the suspect was placed under arrest at the termination of the questioning.). Because Defendant was not in custody, no *Miranda* warnings were required.

Additionally, the record establishes that Defendant's statements were voluntary under the totality of the circumstances. See *United States v. Williams*, 720 F.3d 674, 690-91 (8th Cir. 2013)(providing that the Fifth Amendment requires statements to be voluntary). "A statement is involuntary when it was extracted by threats, violence, or express or implied promises sufficient to overbear the defendant's will and critically impair his capacity for self-determination." *United States v. Boslau*, 632 F.3d 422, 428-29 (8th Cir. 2011).

In this case, the agents' testimony establishes that Defendant understood the agents' questions and the nature of their visit, and that Defendant felt free to decline to answer certain questions. The agents did not threaten Defendant, make promises, or make physical contact with Defendant. Defendant used his cell phone during the interview and the agents did not try to prevent him from using it. The agents did not handcuff or restrict Defendant's ability to move in his house and did not block the front door. The overall tone of the interview was not police dominated. And Defendant was not arrested after the agents ended the interview after approximately two and a half to three hours. In consideration of the above, the undersigned magistrate judge concludes that Defendant's statements were voluntary and were not obtained in violation of the Fifth Amendment.

Finally, Defendant argues that his Fifth Amendment due process rights were violated because the interview was not recorded.  (Filing No. 32 at p. 7; TR. 64).  The Fifth Amendment does not require law enforcement to record custodial interrogations.  See *United States v. Williams*, 429 F.3d 767, 772 (8th Cir. 2005); *United States v. Owlboy*, 370 F. Supp. 2d 946, 949 (D.N.D. 2005)(collecting cases concluding that "there is no federal right to have custodial interrogations recorded.").  If due process does not mandate that custodial interrogations be recorded, it does not mandate that the noncustodial interview in this case be recorded – and in any event, the agency's policy did not permit the agents to record a noncustodial interview.  (TR. 27).

Upon consideration,

**IT IS ORDERED** that Defendant's Motion in Limine (Filing No. 29) is denied, subject to reassertion at trial; and

**IT IS HEREBY RECOMMENDED** to Chief United States District Court Judge John M. Gerrard that Defendant's Motion to Suppress (Filing No. 31) be denied.

Dated this 23rd day of October, 2019.

BY THE COURT:

s/ Michael D. Nelson
United States Magistrate Judge

## ADMONITION

Pursuant to NECrimR 59.2, any objection to this Order and Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Order and Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection.  The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

6